The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning. Please be seated. Mr. McKenzie, happy evening. Good morning and may it please the Court, I'm Andrew McKenzie. I'm from Greenville, South Carolina. It's my privilege to represent the appellant in this case, Ms. Benita Dinkins-Robinson. Ms. Robinson was convicted of two counts of embezzling money from the United States government. Under count one, she was convicted of embezzling money from the U.S. Department of Agriculture. Under count two, she was convicted of embezzling money from the United States Department of Education. She was sentenced to 42 months in prison in order to pay restitution in the amount of approximately $1.5 million. The first issue in the case is whether the Court erred in denying Ms. Robinson's motions for judgment of acquittal. And the second issue in the case is whether the District Court erred in calculating the amount of loss under Sentencing Guideline 2B1.1. Just to give you a little background on the case, Ms. Robinson was the Executive Director of a charter school, a publicly funded independent school. It was the Mary L. Dinkins Higher Learning Academy. It's often referred to as simply MLD in the transcript. The school is located in Lee County, South Carolina. Which county? Lee County. Where is that? That is in the lower part of the state of South Carolina. That's not up around Greenville anywhere. No, sir, it's not. You just got a lawyer from up there. Yeah, how do you like that? But that's a poor rural area down closer to the Columbia or Charleston areas. MLD was receiving state and federal aid, state and federal money. They were receiving money from the U.S. Department of Agriculture to help feed the students. And they were also receiving money to help educate the students. Who got to go to this charter school? Who went to it? How were the students selected or did they select the school? How did they end up with the student body? How did the kids get in there? In this case, it was mostly poor students in Lee County. And I think that there was, I'm not exactly sure, but I think there was some recruiting that went on by Ms. Robinson and others to attract children to the school. Yes, I'm not that familiar with charter schools or whatever they are. But when I was growing up, we always went to public schools. Yes, sir. But they were all poor students. The ones I went with, anyway. In this case, it was mostly poor students. And it is a public school. It's sort of an independent public school. It is a public school? Yes, sir. Public supported school. That's how they end up getting this money from the Department of Education. That's correct. So they receive money. They get federal money, but they're called a charter school. They're not a normal, they're not part of the local school system? That's correct. They're not part of the local school district. They're independent, and they're monitored out of Columbia, out of the state capitol. Are there one in every county in North and South Carolina? I don't know the answer to that. There probably is. I don't know. It's sort of, I don't think there's any pattern to it. I'm kind of getting you off to the side here on these kinds of questions. But I just didn't understand all this. Can I actually ask you a follow-up along that line? Does the charter nature of the school, does that affect your argument at all, under the sort of control and supervision prong? I mean, is there any less control and supervision because it's a charter school? Of the funds? Sorry. The answer may be no, it doesn't make any difference. Well, that's something I wanted to talk about. Is there any authority for a position that does? There was little evidence presented in the case of supervision or control by the federal government or the state government. And you can see that that's the standard, right? That we should be looking at cases like Gibbs and Von Stevens, and that what we should be asking is whether there was sufficient supervision and control. Yes. That's what I'm driving at. But what I wanted to say first was the school was receiving aid from the state government and the federal government as far as education money. It was all publicly funded? Was there private money into it? There may have been some of that. Donations and so forth. You weren't in the case in the lower court, were you? No, sir, I was not. I think there may have been some testimony about donations and so forth, but I don't think there was a whole lot of that. It was primarily publicly funded by the state and the federal government? Yes, sir. Most of it was federal money? No, sir. Not? Most of it was state money. Well, they got a lot of federal money. They must have had a lot of money then. They sure got a lot of federal money. Yes, they did. But the state and federal money was commingled in one bank account. The Dinkins School had one bank account, and all the money that was received from state and federal was all commingled in one account. It was sort of a reimbursement system. They reimbursed expenses that were fronted by the school, right? That's correct. They paid them and then sent a bill or something, a request for reimbursement to the federal government or the state government, and you get a check back. That's what you're arguing. If I understand you right, your contention has something to do with the way it's charged, the way the charges are brought here as to whether they're charged properly. She's charged properly. Well, more than that. There's not much question. She embezzled a lot of money, but the question is whether these criminal charges are the right ones. Well, the crux of my argument is whether it could really be proven by the prosecution that it was federal money that was taken. That's what I'm getting at, the character of the money. Yes, sir. There's not much question that she took a lot of money, but you're saying it lost its federal character once it got there. Yes. So when she stole it, it wasn't federal money. That's correct. So these charges are flawed, and that's the reason she needs a judgment of acquittal, according to you, and your predecessor argued the same kind of thing to Judge Wooten, the district judge. Do you argue that it was charged incorrectly or that there was insufficient evidence to support the charges that were made? I'm arguing really that it's insufficient evidence. The cases that are cited in the briefs indicate that, of course, the government has to prove that it was money of the United States. Can I actually stop just because I do want to make sure I understand your theory of the case. There are two ways of thinking about it, and I wasn't really sure which one you were arguing. One is that there was a bunch of federal money in this commingled account, but the money that started out as federal money had lost its federal character. It just wasn't federal money anymore. Another way to think about it is, oh, no, it retained its federal character. There's $1.5 million of federal money, and then there's many millions of dollars of state money, and we just can't tell which of the money she stole. Do you know what I'm saying? Which theory are you arguing? Well, really, kind of both. You get to pay your money and take your choice. You'd take any one of them and work, wouldn't you? Yes, sir, Your Honor. The way it was presented in district court is it had lost its federal character. The case decided to talk about, you know, in these commingled cases, it's a matter of whether the federal government still retains some sort of supervision or control over the money, and or whether it's traceable. So if the money retained its federal character, you're done. It doesn't really matter whether she took the federal dollars or the state dollars. So long as the money retained its federal character, that's sufficient to justify these charges. Yes, I mean, I would have to concede that. Because it's our position that the government did not prove that any money that was allegedly taken was United States money. First of all, you have to understand that all the money went through the state of South Carolina first before it was received by the school. And the government acknowledged the federal money came from Washington to Columbia and then to the school? Yes. Yes, sir, Your Honor. And the government acknowledged at trial that they were not able to differentiate the federal from the state money. Of the money that was taken or allegedly embezzled, they were not able to differentiate which was state and which was federal. I thought you just said it doesn't matter. So long as the federal money retained its federal character, it really doesn't matter anymore. Well, what we're saying is that once the money was commingled in the one account, it no longer had retained its federal character. In this case, that's what happened. Well, it was federal money and state money put together. Yes, sir. And provided to the school to run the school. Yes, sir. But the case decided... Did it belong to the school at that point? Is that what you're saying? Yes, yes. So it didn't belong to the federal government, so it wasn't stolen from the federal government. At that point, it was the school's money, especially considering it was a reversed instance. But the indictment only said they had to prove $1,000, and $1,000 of it was federal money. That's correct. And you've got $1.5 million of federal money flowing in there and going into this commingled account. $1,000 isn't very much of it. No. But the government acknowledged at trial they could not distinguish the federal from the state money. The FBI agent had testified that she was not able to determine whether the embezzled money was state or federal. She could not differentiate between the two. The U.S. attorney, during arguments on the first motion for judgment of acquittal, conceded there was no way of differentiating the state and federal money. In his closing argument, he repeated that. He argued he didn't have to, right? Yes, he did. They did not argue. The cases talk about in a commingled case, it has to be proven that the government still retains some kind of supervision or control over the money or that it can be traceable. The government at trial did not argue that. They did not argue that the government continued to maintain any supervision or control over the money. And what we touched on earlier, the money in the account was mostly state money by a ratio of 2 to 1, 2 being state, 1 being federal. It was over $3.5 million of state money and $1.7 million in federal money. But given that those, didn't the district court kind of decide, I'm not necessarily adopting the government's broad theory that they don't have to prove which money was which, but given that the numbers are so high and given that they only have to show $1,000, can't a jury reasonably infer that of the $1.5 million stolen, probably $1,000 was federal? Right, and that's where Judge Wooten came down. That's right. He said considering the large amounts involved here in this particular case, the jury is justified in concluding that it was federal money, at least some of it, in an amount over $1,000. What's the flaw in that? Well, there's no case that says that. That's not what the law says. Is there a case that says that's not the case? No, there's not, Your Honor. But what I'm saying is the case is cited, the precedent that I've been able to find says it's really not a matter of the amounts. It's a matter of whether the government proved that it still had supervision or control over the money in some way or whether it was traceable. And they talk about, you know, they give examples of what they're talking about in the cases, you know, such as whether there were periodic reports and audits, whether there were quarterly review or on-site reviews, interviews of the recipients. Was it your position that once she got the money, once the school got the money, there were no strings attached to it? They could do anything they wanted to with it? Yes. It had to be used for the school. No, it had to be used for the school. It couldn't be used for her personal purposes. The record doesn't support that. There's testimony about audits, right? There was very little evidence. There was some evidence of that, Your Honor, but there was very little. I mean, I have to concede that, but there was very little evidence of that in this case. There was one witness, a Walter Cottle, who talked about restrictions being placed on the schools and how they can spend the money. Yes, that did happen. Funds were restricted, you know, for the use of the cafeteria programs. He was talking about money from the Department of Education. You know, there were audits done. Yes, there was some testimony about that. But I don't know, other than that one witness, I don't know that there was a whole lot of evidence. I don't think there was a whole lot, but there were two other witnesses that said similar things, Mr. Eaton and Mr. Moser. I would concede that Mr. Moser got into that, son, yes. He was a defense witness. There was some evidence of that, but nobody from the federal government testified other than the FBI agent. And the investigation in this case was not initiated by anything that was uncovered by any federal government control over the case. It was initiated by employees at the Alliance Life Insurance Company who noticed some suspicious behavior. But thank you. Thank you. Here from the government. Mr. Holliday. I'd like to start out, if I could, answering a few of the questions that you asked before. Judge King, just to give you a little orientation as to the school district when you started off. Lee County is one of the three poorest counties in all of South Carolina. It is a public school district, obviously. You might have heard of the Corridor of Shame. It's something that those of us in South Carolina know very much about. Bishopville is right there along that corridor. Charter School is very much a public school, but it's an experimental public school. It's one that splits off. It still receives state and federal money and local money, as do all public schools. But the Charter School is an opportunity for somebody with a different theory to try to make something work better. And, for example, in Columbia, there is a Chinese immersion charter school where the students go and they learn in Chinese all day. And so, obviously, that's an experimental school. But just as with the MLD Academy, it receives federal money, state money, and local money. Initially, it was a part of the local school system. There's basically, at the time, there were two ways for a charter school to be set up. One was that it would fall under the umbrella of the local school district. They would monitor it, administer the funding. But schools can opt out and go under this statewide charter school district, which is in Columbia. When the relationship between Lee County and MLD broke down, they left, and then they became part of the statewide charter school district. So when you see testimony from Robbie Compton, he works for the statewide charter school district, not for Lee County. But they, during their lifespan, at one point, they were under Lee County. At another point, they were under the statewide charter school district. That's really just background. The entire time, they were receiving federal money. I want to cut to the chase, if I could. As far as supervision and control, there was ample supervision and control the entire time. I'd like to start with count one, if I may, because that's the food money, and it's the clearest, because all food money comes from the USDA. So all of that money was federal money. It's administered by the state. The state is the agent for the federal government in administering that money. Is there a contract that they have? There is a contract that's set up very early on, and Walter Caudill testified to that. The state in which the state is set up is the agent? Absolutely. That's exactly how it's administered. I believe, Judge Harris, you asked this question. What are the controls? One of the things that Walter Caudill testified to is he paid an on-site visit to the school to check the paperwork, because as the students come through the line, they're checking off head count, because that is how a school is reimbursed by the number of children who are fed breakfast, lunch, after school, all of these things. So Walter Caudill, as an agent, working for the state government, but as an agent for the federal government, administering the USDA food program, is, first of all, monitoring the paperwork. The paperwork is being submitted electronically every month to the federal government for reimbursement. So that's also another control. It's not like it's a block grant, do with it what you want. It's a representation by the school, this number of children ate these particular meals, and we want this money back. So the state pays out the money and then gets reimbursed. I thought maybe it was the other way around. The state would justify the payment out, would make an estimate or something. The very first month. I don't know if we got into that in trial, but let's say the first month the expenses might have come from state funding or whatever that generally was used to run the school. But it is a reimbursement. Then after that, it was directly linked to food services. What was particularly compelling about Count 1 was that there was a shell company, Teeny Catering, that was established. The testimony was that this was the company that fed the students. If you looked at the bank accounts for Teeny Catering, there was no evidence of that at all. It was basically a slush fund for the defendant to spend the money as she wanted. You would expect for a catering company that was feeding school children that there would be some churn in the account. There would be massive grocery bills or distributor bills coming in that they would be paying, and then they would be feeding the students. All you saw was money coming from the MLB account, which was at MBSC, into the T&E account and then paying personal expenses to the defendant. There was no evidence that it was used to feed students at all. As far as Count 1 goes, there's substantial supervision and control. First of all, by the federal government, because of the system that's in place for reimbursement, the electronic submissions that go up every month, the paperwork that has to be established at the school, but then you've got an agent on the ground, Walter Carter, who actually visited and saw that many of these things were deficient at the school level. If supervision and control is the standard that this court wants to adopt or use in this case, we embrace that standard. It's not an issue. Can I just ask you a question about that standard? Supervision and control, I may be misunderstanding this. I thought that goes to whether the money in question retains its federal character. Assuming that the money retains its federal character because it was supervised and controlled, how does that address the separate question of whether you can show that it was actually the federal money, which has retained its character, that was embezzled and not state money? Is that a separate question or does supervision and control answer that too? This is what I'm having trouble with. They're tied together. One supports the other. The reason I started with count one is because it's all USDA money that pays for the food program and then the USDA money was going to this teeny catering account. Not only does it retain its character, but it's very traceable. Even though it's going into this slush bank account, it's all state and federal money. What about count two? Just a general question. Does supervision and control answer the question there too or do you want me to show something else? First, supervision and control. Robbie Compton testified at trial. He worked for the state-charged school district. He administered Title I, Title II, and IDEA funding. Obviously, this is money that's coming in over the course of a year that the school is having to submit paperwork to receive. Again, just as Walter Cottle did with food, you have Robbie Compton because this is federal money. He is an agent working for the state on the state payroll. However, he is administering federal programs. To the extent that Robbie Compton was supervising Title I, Title II, and IDEA money as they went to the school and the school was having to submit paperwork to justify that funding on an annual basis, then yes, there was sufficient supervision and control there. Was there any obstruction to the jury about these things you're arguing about or whether the jury had to make any findings in that regard? Well, the jury were given the standard 641 elements, which was we had to prove at least $1,000 was federal as to the food money and as to the education money. So those answers there weren't? I don't believe there was anything to those answers. And they didn't request any? They did not. There's no error alleged or preserved with respect to the obstruction? No, Your Honor. So assuming on count two that the money retains its federal character, how do you get past the issue that the district court was really grappling with? Like, okay, there's federal money in this account. It retained its federal character. There's also state money in the account. How do you know that some of the money that was embezzled was federal? Much more challenging with count two. That's what I'm asking about. However, if you view it as state money and other money that went into this massive undifferentiated account, as Judge Motz pointed out earlier, two state dollars to one federal dollar in the account, that was basically how it broke out. I asked one of the witnesses a question In other words, all of the inputs into the account were based on Benita Dinkins Robinson's representations. She was the one cutting the checks. And she would write in the red line or the four line what they were for. We established, at least through the food account and other accounts, this was not grounded in reality. The rent checks with Project Reach, those were not grounded in reality.  So, Judge Harris, I don't want you to think It was a horror. Do you want us to adopt the district court's rationale? I literally don't understand what you want us to say. Do you want us to adopt the district court rationale that, look, the numbers are high enough. She stole $1.5 million. The account was one-third federal. Clearly $1,000 of that was federal. At least there's no evidence that there was any effort made to make that not happen so the jury can infer that it happened. Is that what you want us to say? I am. Although, I am saying that for count two. I am telling you that, in my view, count one is a much stronger count. But count two is sufficient. Is it true that a government witness conceded that as to both counts, you can't really trace the money? Semantics. Here's the thing. The NBSC account, this was appointed, that I own. When state and federal money goes into one central account, once all that money is in that account, they're just dollars. They retain the character because of where they came from. However, if my paycheck and my wife's paycheck are all deposited into the same account and then I go to make a withdrawal, it's our money. Logically, some of it's hers, some of it's mine, but once it's in the account, it's in the account. What I think the standard should be in the Fourth Circuit because we have a Ninth Circuit case law, is that once it hits that account and there's, you know, it really, as long as it's $1,000 or more, if money is stolen out of that account in excess of $1,000, that should be sufficient. Now, we did more with count one, but you cannot be rewarding defendants for setting up a slush fund. Wouldn't you have been better off if you had charged it as false claims? There are a number. I could have charged it as fraud. I could have charged money laundering or whatever. I thought 641 was the simplest. That's the way I went. As my practices develop, I tend to charge multiple different counts just so a surprise element doesn't come up to bite me, but at the time we went with 641. I'm comfortable with that today. Let me just understand with respect to count two. There is, let's just say for purposes here, there's $400,000 in this count, and you say that of that $300,000, $100,000 is federal money, right? Is the whole $300,000 stolen? See, I don't think it is. That's what your problem is. I mean, isn't some of it used for the purposes for which it was intended? Oh, absolutely. It's true. However... Well, then, how can we be sure that it's federal money that was stolen? Well, because it's cutting it too fine and it's rewarding conduct to the extent that a defendant obscures the criminal activity. So we have a commingled account with no accountability. We have shell companies that she's a part of and that she's funneling money to, getting cashier's checks out of, whatever. The more obscure the crime becomes, if the rule is, well, there was some state money in there, so we can't be sure it was federal money, then, actually, it becomes very difficult to prosecute school cases. Well, if you're charged with a false claim, you wouldn't be arguing this issue. You wouldn't have this issue. You wouldn't have to face it. Yeah, the jury found this. False claim with the government. You got the jury verdict on your side. And we've got to look at it most favorable to you. I agree, but the jury didn't have to stretch here. Given $1.5 million in the account was federal, three and a half was state, three and change was state, and she steals close to $1.5 million. It's not a stretch at all to say, okay, we've got the food money here, at least $1,000. Was all the loss attributable to the money in account one? Oh, no, it was not. The loss was 1.5. Right, and that wouldn't have, the food money was just under a million. So you get into the other, and there's a chart that I've included in my brief, twice, I believe it is, that breaks it out. The Allianz accounts, the cash withdrawals, the J&J contracting, all of these things that show that it wasn't all food money that was stolen. Okay, I'm sorry to belabor this, but I have to go back to Judge Harrison's question. So was the argument made that this money, once it got into this account, was not federal money? Was that the argument that the defendant made? Absolutely. Oh, the defendant made. Right, there are two sides here. No, I've got you. I only laugh because the defendant made a very strange argument. Their argument was that once she received the money in reimbursement, it was just her money. It had no character at all. It was basically like it was her money, and it's just simply not the case. When you make a claim, you tell the federal government, I've incurred $400,000 in food expenses. That's the only reason the government's going to pay. They're not going to pay if you say, I would really like $400,000. So her argument at trial was just blatantly wrong. Was her argument at trial, you're talking about made to the judge or the jury or both? Both. It was made... It was their theory. They told the judge this, and they argued to the jury that. That was their defense. This was not federal money. It was. There wasn't $1,000 federal money. There wasn't federal money because I got reimbursed for it. Right. And no instruction was offered. But... Well... You can't eliminate an argument that there's insufficient evidence because the defendant made the wrong theory for saying that, can you? Well, I'm not. I'm just explaining what their theory of the case was. No, no, I asked you the question. Okay, maybe I better ask a colleague. What... The argument that I'm making to you is once an account is commingled with state and federal money and we reach that $1,000 threshold and we have blatant theft out of the account... You're saying that $2,000... And it's all federal money. That once... You're saying, basically, that the state money becomes federal money when it's mingled with the federal money. Well, I'm not... Okay, you're right. I'm not doing a semantic thing, but I'm not... We obviously didn't say $5,000,000 was stolen. So we didn't say it all became federal money. But we're saying that at least... If they stole $1,000,000 out of $5,000,000 and the half that they stole was all the federal money. Yes. And that was demonstrated from the ground up through looking at the accounts, the money that was taken out of the accounts, the Allianz accounts, where money was siphoned over there. So it wasn't just a, this is the amount of federal money that came in. This must be what was stolen. This was traced to these various funds that she basically used as slush funds to fund her lifestyle, her retirement, and all of these. What was the tracing? You couldn't be tracing the income of federal money to it. Well, you've got... The federal money goes to the MLD account, which, again, is this one big account. Right, but there's state money in there, too, we know. Right. But then it goes to all these various... To the T&E account, which is all food money, we know. Okay, let me ask you this. I've had another case in the deep recesses of my mind over the years, in which the federal government, the state government is suing the federal government in a cooperation like this, saying you are claiming more money in this reimbursement than you're entitled to. There's no fraud. There's no criminal defendant involved. They're the two governments suing each other. And I think there's circuit law... You never came across that case? I did not. I apologize. I think there's a published opinion about that. And I think that there was an argument about what had to be proved with respect to whose money it was. As you can see, the state, I guess, has not claimed, no, this is not federal money, this is state money. Right. Have they recovered the state money? It's gone. This maybe goes to my question, because the restitution order, the whole one and a half million dollars goes back to the federal government? Right. Isn't that weird? Like, isn't part of that money sort of... Well, we proved the federal laws. I mean, we say there is a restitution order, but the money's gone. I mean, we recovered what we could seize from the Allianz accounts and all that. But I guess it doesn't matter, because the state's not arguing that some of that money should come to us. But it seems like... And to take it to the next step, the rule, I guess, that the defendant impliedly is urging this court to adopt is as long as you steal an amount less than the amount of the state money that's in an account, they want you to adopt the opposite, to say it's all state money. Well, no, they don't want us to say that it is state money. They want us to say that you can't prove beyond a reasonable doubt that it's not. I mean, the burden's on you, right? Right, right. And we did it. You've got... When you have a circumstance when federal and state money is going into the same account, whether you want to... Any kind of accounting procedure you want to use given the influx of money coming in every month, whether it's first in, first out, last in, last out, or just a two-to-one ratio, it's a reasonable inference by the jury to find that for every $3 that was stolen, $1 was stolen. Well, that's the district court's sort of narrower theory, but I thought you were saying your position would be the same if this were a $5 million account and all but $2,002 came from the state. You would still be making the same argument, right? Whatever. It's coming. It's all federal money. Oh, no. No. She would be held accountable for the $2,002, the federal money. I couldn't reach into the state pocket. But you could still charge her. Oh, absolutely. Okay. I mean, the statute's written as it's written. It's $1,000. But you think you could prove that if she stole $1.5 million from a $5 million account of which only $2,000 were federal, you can prove beyond a reasonable doubt that among that $1.5 million she stole was federal money? It's a reasonable inference by the jury. Why? Isn't it a much more reasonable inference that odds are none of it was federal? No. Why not? Because it's a two-to-one ratio of the money that's in it. No, it's not. Not in the hypothetical I gave you. It's not at all. It's... I think once federal money hits that account, don't steal from it. I mean, why would... Well, the questions go this way. I understand that. Why would we reward somebody... That's a great lesson. That is a great policy argument. But I'm still struggling with the idea that you have to prove beyond a reasonable doubt in my hypothetical that even though only $2,000 of the $5 million account was federal, when she stole $1.5 million, beyond a reasonable doubt, it included the full $2,000 that were federal. Why would anyone infer that? Because the account was a commingled account. That's the issue. It was commingled. We could come up with all kinds of horrible ratios. But we've already established she didn't steal everything. That would be true if she stole the whole $5 million. But she did steal the whole $5 million in the hypothetical. Right. She stole some fraction of it. Why wasn't the $2,000... $2,000 was federal, not the stolen part. Because of the nature of the account and what composed it. So you really are saying once there's federal money in that fund, and assuming the federal government maintains supervision and control, all of the money is federal. To the extent that any money comes out and is stolen. Yes. You may get away with this, but I think you'd be a lot better off to charge it differently. False billing. And you'd be clean. And you wouldn't have to deal with this. And we wouldn't have to deal with it. Well, I understand that, Judge. And certainly, if it comes back up, and we hope that it doesn't, that's the way we'll do it. However, I believe the 641 charge is sufficient. And I understand the Court's questions as to Count 2. And I think Count 2 survives, at least, under my argument. But Count 1 is... Well, what would happen if we were to reverse on Count 2? You don't get the special assessment. Right. The conviction stands. She's still... Is it a concurrent sentence? Yes, it is. Wouldn't affect the sentence? Would not. I'll be glad to answer any more questions, I think. I'm up. Okay, thank you very much. Mr. McKenzie, do you have any rebuttal? Just briefly, if I may. One thing I wanted to say was, the commingling cases talk about supervision and control. And that's what has to be proven. There was some evidence, as we talked about, about supervision and control in this case. But it was evidence of supervision and control of the commingled money. I don't know that there was any evidence of supervision and control over the federal money. It's supervision and control by somebody who testifies that he is an officer representing the federal government. Right. So the reason he's there is because of the federal money. I believe that the person that did the audits or the inspections were state government employees. Right. That were under contract to do this with the federal government. Yes, that's correct. But I mean, they were monitoring the money that had already been commingled. I don't know that there was any... I don't think that's really necessarily a good argument for you. If there's federal supervision and control over all of the commingled money, that might well indicate that we can treat all of the money as federal for these purposes. Are you sure you want to argue this? I don't know that that makes it federal money. I thought the first thing you told me when I asked you is that you were conceding that the supervision and control standard is what makes money federal. Yes. So if the federal government is supervising and controlling the whole of this commingled account, I guess it's federal money for these purposes. What? I understand what you're saying, but I don't know that that would make the whole pot federal money. I don't know that it's just a matter of semantics. The government seems to be taking a different position now from what they said at trial. At trial they were saying we cannot differentiate between the state and federal money. We don't have to. And now it seems like they're saying, well, okay, we do have to differentiate, and we did. Well, they're a moving target. But they're entitled, we're entitled to affirm on any theory. And you have a different theory. Assertively, you said at trial, your president said at trial, that just because she used the money after she put in her account it was no longer federal money. That's correct. So you don't adopt that theory right now, do you? Well, that was definitely, I would say I adopt that theory in the sense that there was no proof of supervision and control of the federal money. Specifically. I don't know there's any proof that it was traced, that federal money itself was traced in any way. And it's like, Judge Harris, what you said about the restitution, at the sentencing hearing we've got the same problem. It can't, we can't differentiate what's state and what's federal. Did you object to the restitution order? Or, I'm sorry, did your counterpart, was there an objection lodged to the restitution order? I believe there was. I mean, not after the fact, but there were all kinds of objections to the calculation of the amount of costs. And the restitution, I believe that was objected to if I'm not mistaken. I'm not sure, but I think it was. The federal laws affected the sentencing and there was a restitution order and then there was a forfeiture. Yes, sir. You don't raise any issue about the forfeiture. Right? You said earlier all you raised was the convictions and the laws for the restitution. You didn't say anything about the forfeiture. I have not raised that specifically, no. But as far as the restitution, you know, it was a million and a half dollars and you know, it was determined that the Department of Agriculture should receive $954,000 out of that. That was the food part, count one, right? Yes, sir. The investigation, in the precedence report, the investigation revealed that the Department of Agriculture provided this much in federal funds to MLD. That was the total amount of funds if I understand it correctly, that's the total amount of funds that they provided to MLD. Some of it, which may well have been perfectly legitimate and may have been used for legitimate purposes. That was never delineated. And then the remainder, apparently just the remainder was some $607,000 and that was given to the Department of Education. And the way I read the record, the only reason they got that amount was because that was simply the remainder from what was left over after they paid the Department of Agriculture. But still, you've got this problem that you can't differentiate the state and federal money. Is that as important at sentencing where the court can consider all sort of relevant conduct part of the same course of conduct? It seems like maybe this is less important at sentencing. Could be state money, could be federal money, but it's all part of the same series of investments. Well, but the reason I raise that is because you talked about isn't it a little weird that the federal government got all the money whereas the state got none. And it's like that does seem a little weird because if we can't differentiate why shouldn't the state get some? I'm not sure that that's I wonder whether that's more the state's problem than your client's problem. Because they're representing the federal government. The United States Attorney represents the federal government. Yes, sir. I guess. I mean that's what I guess that's the answer. Okay. He's here for the faith. That's right. Thank you very much. Mr. McKenzie, we understand that you're court appointed. Yes. We very much appreciate your service. I'm glad to. Thank you very much. Take a break. I'm done. We will come down and greet the lawyers and then we'll go directly to our next case.
judges: Diana Gribbon Motz, Robert B. King, Pamela A. Harris